**DAIRYLAND INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**Ann R. MAKOVER, and Bernard Makover, Defendants-Appellants,**

v.

**Robert Lawrence KNAUER, et al.,**
Defendants-Appellees.

No. 80–7232.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 4, 1981.

Neely, Player, Eichelberger, Hamilton, Hines & Welch, James A. Eichelberger, Atlanta, Ga., for defendants-appellants.

Hurt, Richardson, Garner, Todd & Cadenhead, J. Robert Persons, Atlanta, Ga., for Dairyland Ins. Co.

Henning, Chambers & Mabry, W. C. Brooks, Arthur L. Myers, Jr., Atlanta, Ga., for Hartford Ins. Co.

Before MILLER,* Judge, and FRANK M.

* Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Ann and Bernard Makover, the appellants in this case, appeal from an adverse judgment, after trial by jury, in a declaratory judgment action brought by Dairyland Insurance Company concerning the coverage of an insurance policy.

In an automobile accident in 1977, a Ford station wagon driven by Robert Knauer collided with a car driven by Ann Makover and owned by her husband Bernard Makover. The station wagon driven by Mr. Knauer was owned by a Ms. Lundeen, who was covered by an insurance policy issued by Dairyland. Dairyland sought a declaratory judgment that Mr. Knauer was not covered by its policy issued to Ms. Lundeen. The precise issue before the district court with respect to the Dairyland policy issued to Ms. Lundeen was whether Mr. Knauer had implied permission to use Ms. Lundeen's station wagon at the time of the accident.[1]

Dairyland named as defendants in its declaratory judgment action the Makovers, Mr. Knauer, Mr. and Ms. McDowell (two other parties injured in the accident), and the Hartford Insurance Company. An amended complaint named another couple injured in the accident, Mr. and Ms. Callaway, as additional defendants. Dairyland's declaratory judgment action was filed after civil actions seeking recovery for personal injuries resulting from the accident were filed in state court against Mr. Knauer and Ms. Lundeen by the Makovers, the McDowells and the Callaways.

Mr. Knauer's wife, Charlene, worked for Arden Farms, which was co-owned by Ms. Lundeen and a Ms. von Suttka. Arden Farms purchased a pickup truck for Ms. Knauer's use for transportation to and from her employment at Arden Farms. Title to the pickup truck was originally in Ms. Knauer's name but was subsequently transferred to Arden Farms. The Hartford Insurance Company, which was named as a defendant by Dairyland and which is an appellee in this appeal, issued a policy covering the pickup truck and listed Ms. von Suttka and Arden Farms as the insureds. Hartford cross-claimed seeking a declaratory judgment that its policy covering the pickup truck did not afford coverage to Mr. Knauer. The issue before the district court with respect to the Hartford policy was whether the station wagon driven by Mr. Knauer that was involved in the accident was a temporary substitute vehicle (i. e., a substitute for the pickup truck) subject to coverage under the Hartford policy. Ms. Lundeen had allowed Ms. Knauer to use her station wagon only after the pickup truck, which was insured by Hartford, had broken down.

The district court submitted four interrogatories to the jury, which found that Mr. Knauer did not have the implied permission of Ms. Lundeen, Ms. von Suttka or Ms. Knauer, and also that his use of the station wagon was not within the scope of use authorized for Ms. Knauer.[2]

The Makovers appeal from the district court's denial of their post-trial motion for judgment n.o.v. or in the alternative for a new trial. They also appeal from the trial court's denial of their post-trial motion to

1. The pertinent provision relating to permissive use in the Dairyland policy issued to Ms. Lundeen stated:

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his actual use thereof is within the scope of such permission . . . .

2. The interrogatories were as follows: (1) On November 21, 1977, did Robert Knauer have the implied permission of Charlene Knauer to use the Ford station wagon in issue in this

lawsuit?; (2) On November 21, 1977, did Robert Knauer have the implied permission of Edith Landrum Lundeen to use the Ford station wagon in issue in this lawsuit?; (3) On November 21, 1977, did Robert Knauer have the implied permission of Patience von Sutka [sic] to use the Ford station wagon in issue in this lawsuit?; and (4) Was the use by Robert Knauer of the Ford station wagon on November 21, 1977, within the scope of use authorized for Charlene Knauer as to the 1963 Ford pickup truck?

dismiss for lack of diversity jurisdiction under 28 U.S.C.A. § 1332(c).

Initially, appellee Dairyland contends that the appellants Makovers lack standing to appeal because they were merely nominal defendants in this declaratory judgment action. Dairyland emphasizes that its action concerned only the issue of the coverage of two insurance policies, issued by Dairyland and Hartford, to which the Makovers were not parties. Although Dairyland claims on appeal that the Makovers' interest in the declaratory judgment action is not sufficient to grant them standing to appeal, it apparently thought that the Makovers' interest was sufficiently affected to name them as defendants.[3] Dairyland contends that the Makovers are merely potential or contingent judgment creditors of Mr. Knauer and that their interest is insufficient to confer upon them standing to appeal. It argues that the availability of insurance proceeds to satisfy a potential judgment is only a remote and secondary consequence of this litigation. Dairyland cites *Libby, McNeill, & Libby v. City National Bank*, 592 F.2d 504, 511 (9th Cir. 1978), which held that a party may appeal only to protect its own interests and not those of a co-party and that the appellant's interest must be immediate and pecuniary and not a remote consequence of the judgment. It also relies upon the rule that ordinarily only a litigant who was a party below and who is aggrieved by the judgment or order may appeal. *See Goldstein v. Andresen & Co.*, 465 F.2d 972, 973 n.1 (5th Cir. 1972).

■ We hold that the appellants, as potential judgment creditors claiming liability in a state court tort suit against the putative insured, have standing to appeal the judicial declaration that the policy of insurance issued by Dairyland does not cover the putative insured.

It is decisive to our holding that Dairyland named the appellants as defendants in its declaratory judgment action. In a declaratory judgment action brought by an insurer to determine coverage under a liability policy issued to the insured, third parties claiming liability in state tort suits against the insured have been held to be proper parties to the declaratory suit, even though their claims against the insurer were contingent upon recovery of a judgment against the insured. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422, 423 (5th Cir. 1942); *Automobile Underwriters Corp. v. Graves*, 489 F.2d 625, 627–28 (8th Cir. 1973); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962). In *Hawkeye-Security Ins. Co., supra*, the court held that an injured third-party, who had filed a state court tort action against the insured, was improperly dismissed from a declaratory judgment action brought by the insurer to determine whether its policy covered the insured. The injured party was named by the insurer as a party defendant in the declaratory action. Significantly, only the injured party appealed from the declaratory judgment; the insured defaulted. Rejecting the insurer's contention that the injured party was properly dismissed, after the insured defaulted, because he was merely a nominal party, the court reasoned that "it would be anomalous to hold here that an actual controversy exists between appellant [the injured party] and appellee [the insurer] and yet deny appellant the right to participate in the controversy." 302 F.2d at 177. The court emphasized that the insurer voluntarily brought the appellant into the declaratory judgment action as a party defendant. *Id.*

Appellants Makovers' first contention is that this action should be dismissed for lack of diversity jurisdiction under 28 U.S.C.A. § 1332(c), which provides:

3. Dairyland asserts that it joined the Makovers as defendants for two reasons: to restrain the state court civil action that the Makovers brought against Mr. Knauer, pending a resolution of the dispute between Mr. Knauer and Dairyland over coverage of Dairyland's policy, and to protect Dairyland from subsequent litigation with the Makovers in the event that Mr. Knauer was found liable to the Makovers in their state court suit against him. Dairyland, however, did not seek to stay the state court actions.

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: Provided further, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

The defendants Makovers, Callaways, McDowells, and Mr. Knauer, as well as the insureds Ms. Lundeen and Ms. von Suttka, are citizens of Georgia. Dairyland is a citizen of Wisconsin while Hartford is a Connecticut citizen. The Makovers argue that Hartford and Dairyland are deemed to be citizens of the state of which their insureds are citizens, i. e., Georgia, and therefore diversity jurisdiction is lacking. Appellants rely upon *Campbell v. Insurance Co. of North America*, 552 F.2d 604 (5th Cir. 1977) (per curiam); the appellees distinguish *Campbell* and rely upon *Aetna Cas. & Sur. Co. v. Greene*, 606 F.2d 123 (6th Cir. 1979).

In *Campbell* this Court considered an attempted appeal via trial de novo from an award of workmen's compensation by the Texas Industrial Accident Board. The district court dismissed the insurer's suit for lack of diversity jurisdiction on the authority of *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir.), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974), which held that in a direct action by an employee against his employer's workmen's compensation insurer, that insurer shall be deemed a citizen of the state of which the insured, i. e., the employer, is a citizen. The Court in *Campbell* stated that the sole distinction between the case before it and the situation in *Hernandez*—i. e., that in *Campbell* it was the *insurer* that was appealing, whereas in *Hernandez* the injured workman was appealing—was a distinction without a difference. The *Campbell* Court rejected the insurer's contention that the case was not a direct action within the meaning of Section 1332(c) and stated that the directness of the case was as immediate between the injured claimant and the insurer as in *Hernandez*. However, the *Campbell* Court emphasized that the actual nature of the overall workmen's compensation proceeding—the claim was initially presented to the state Board, with an appeal de novo to the district court—was that of a process initiated by the injured workman against the insurer, with the burden of proof remaining on the plaintiff-workman even on the de novo appeal. The district court in *Campbell* in fact formally realigned the parties to reflect that fact.

The Sixth Circuit in *Aetna Cas. & Sur. Co. v. Greene, supra*, 606 F.2d 123, held that Section 1332(c) did not apply to a direct declaratory judgment action brought *by*, rather than against, a workmen's compensation insurer. The court stated: "Neither the legislative history nor the statutory language of [Section 1332(c)] supports the conclusion that its provisions were intended to apply to an action in which a liability insurer is the moving party." *Id.* at 127. The court emphasized that the language of Section 1332(c) specifically refers to "any direct action *against* the insurer . . . ." *Id.* The court also held that a declaratory judgment action is not a direct action within the meaning of Section 1332(c). *Id; see also White v. United States Fidelity & Guar. Co.*, 356 F.2d 746, 747–48 (1st Cir. 1966).

We agree with the district court that *Campbell* is distinguishable from this case. The suit in *Campbell* was brought by the insurer pursuant to the unusual appeal procedure provided by Texas workmen's compensation statute. Under that statute, even though the appeal to the district court was brought by the insurer, the action required a trial de novo in district court in which the burden of proof remained on the claimant. The holding in *Campbell* that the insurer was to be deemed a citizen of the state of which the insured was a citizen must be understood within the peculiar context of the de novo appeal procedure under Texas workmen's compensation law.

In this case the action was not brought under authority provided by state law but rather was instituted by the insurer pursuant to the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201. The suit was not brought by an injured party against an insurer, nor does it involve a trial de novo in which the injured workman retains the burden of proof. We conclude that Section 1332(c) is not applicable to this declaratory judgment action in which a liability insurer is the plaintiff. *See Aetna Cas. & Sur. Co. v. Greene, supra,* 606 F.2d at 127.

Appellants also argue that diversity jurisdiction is lacking because Dairyland's declaratory judgment action is a direct action against Hartford, which was named as a defendant, and thus this is a direct action against an insurer to which action the insured has not been joined as a party-defendant. This contention is without merit. Although Hartford's insured, Ms. von Suttka, was not named as a party-defendant, the putative insured of Hartford, Mr. Knauer, was named as a party-defendant.

The term "insured" as used in Section 1332(c) includes a person insured by reason of an omnibus clause as well as the named insured. *Williams v. Liberty Mut. Ins. Co.,* 468 F.2d 1207, 1209 (5th Cir. 1972). Thus, for the purpose of Section 1332(c), Mr. Knauer, as the putative insured, is considered as being within the coverage of the omnibus clause. The Makovers urge that Dairyland may not assert on the one hand that Mr. Knauer is not an insured under the Hartford policy, and on the other hand assert that he is an insured for the purposes of Section 1332(c). A similar contention was rejected in *White v. United States Fidelity & Guar. Co.,* 356 F.2d 746 (1st Cir. 1966). The plaintiff, who asserted that she was an insured of the defendant, brought a declaratory judgment action in state court seeking a determination that an insurance policy issued to her by the defendant insurer was still in effect. The defendant removed to federal court and the plaintiff appealed from the district court's denial of her motion for remand. The court stated:

She [the plaintiff] seeks to invoke Section 1332(c) to destroy diversity jurisdiction on the ground that this is an action against the insurer where the insured [*i. e.,* the plaintiff herself] is not joined as a party defendant. But the whole substantive issue raised by her petition for declaratory judgment is whether at the date of the accident she was an insured and [the defendant] was her insurer. In short, resolution of the ultimate substantive issue is a prerequisite to the resolution of the preliminary jurisdiction issue.

*Id.* at 748.

Appellants also contend that the district court erred in denying their motion in the alternative for a judgment notwithstanding the verdict or a new trial. In determining whether a motion for judgment n.o.v. or for a directed verdict should be granted, "[t]he trial court originally, and this Court on appeal, must examine the evidence in the light and with all reasonable inferences most favorable to the party opposing the motion. '[I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'" *Williams v. United Ins. Co. of America,* 634 F.2d 813, 815 (5th Cir. 1981), *quoting Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A trial court may, in the exercise of its sound discretion, set aside a verdict and grant a new trial if, in its opinion, "'the verdict is against the clear weight of the evidence * * * or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *United States v. Bucon Constr. Co.,* 430 F.2d 420, 423 (5th Cir. 1970), *quoting Aetna Cas. & Sur. Co. v. Yeatts,* 122 F.2d 350, 352–53 (4th Cir. 1941).

Arden Farms, which is co-owned by Ms. Lundeen and Ms. von Suttka, purchased a pickup truck for the use of Ms. Knauer, an Arden employee. Title to the truck was initially in Ms. Knauer's name but was later

transferred to Arden for tax and insurance purposes. Ms. Knauer was told that she could use the truck for transportation to and from work but there was apparently no testimony that she was ever told that she could not use the truck for personal reasons. Indeed, Ms. Knauer used the truck as though it were her personal vehicle. Ms. Lundeen testified that she told Ms. Knauer at the time the truck was purchased that no one else was allowed to drive the truck; she also testified that that was probably the only time that she instructed Ms. Knauer to that effect. However, both Mr. and Ms. Knauer testified that neither of them was aware of any prohibition from Ms. Lundeen or any one else at Arden Farms against Mr. Knauer's use of the truck. Ms. Knauer testified that she allowed her husband to freely use the truck, although she also testified that she could not recall any specific occasion when he used the truck without her permission. Mr. Knauer testified that he used the truck for his personal purposes on several occasions. He further testified that his wife never denied him the use of the truck. Neither Ms. Lundeen nor Ms. von Suttka ever directly told Mr. Knauer that he could not use the truck, and he testified that he understood that he had use of the truck. Ms. Knauer permitted her husband to use the truck for his personal purposes on several occasions. Mr. Knauer undertook the maintenance of the truck and did some extensive repair work on it. Prior to the accident the truck became inoperable and Ms. Lundeen gave Ms. Knauer permission to use her station wagon in place of the truck. Ms. Lundeen testified that she specifically instructed Ms. Knauer that she was not to use the station wagon for personal reasons. Ms. Knauer, however, testified that she used the station wagon in the same way that she had used the truck and she further testified that the first time that she heard that her husband was not supposed to use the station wagon was after the accident. Both Mr. Knauer and his wife testified that he had on occasion used the station wagon.

Mr. Knauer's personal vehicle was inoperable on the day of the accident. He ac-

knowledged that he ordinarily drove his personal truck. On the day of the accident, Mr. Knauer drove Ms. Knauer to Arden Farms in the station wagon; he left that vehicle at Arden and then departed with a friend in another vehicle. Mr. Knauer returned to Arden Farms about 4:00 p. m. and took the station wagon without the permission or knowledge of Ms. Knauer or Ms. Lundeen, both of whom were then present at Arden Farms. He testified that he had no reason to believe that he could not use the station wagon and further that he assumed that the station wagon was there for his use. Mr. Knauer drove the station wagon to a restaurant and bar and was returning to Arden Farms for the purpose of picking his wife up and taking her home when he was involved in the accident.

▇ The question of permission in this case is whether Mr. Knauer had implied permission and the test under Georgia law is whether the jury, considering all the facts and circumstances including the relationships of the parties concerning the use of the vehicle, could have found that a reasonable person would have inferred from the circumstances that permission was implied. *American Employers Ins. Co. v. Johns*, 122 Ga.App. 577, 178 S.E.2d 207, 210 (1970). The rule under Georgia law is that a permittee's allowance of a third party to use the named insured's vehicle does not preclude recovery under an omnibus clause where the second permittee in using the vehicle is serving some purpose of the original permittee. *Strickland v. Georgia Cas. & Sur. Co.*, 224 Ga. 487, 162 S.E.2d 421 (1968). Moreover, "slight and inconsequential" deviations will not annul the coverage of the omnibus clause where the purpose for which the vehicle is used at the time of the accident is a purpose within the scope of the original permission. *Phoenix Ins. Co. v. Bentley*, 126 Ga.App. 857, 191 S.E.2d 887 (1972); *Hodges v. Ocean Accident & Guar. Corp.*, 66 Ga.App. 431, 18 S.E.2d 28, 32 (1941), *cert. denied*, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763 (1942).

After carefully reviewing the record, we conclude that the district court did not err in denying appellants' motion in the alternative for judgment n.o.v. or a new trial. The district court properly denied appellants' motion for a new trial because the verdict was not against the clear weight of the evidence. There is ample evidence in the record to support the findings in the jury's verdict that Mr. Knauer did not have the implied permission of Ms. Lundeen, Ms. von Suttka, or Ms. Knauer, and further, it appears that he was not, on the occasion of the accident, operating the station wagon within the scope of permission that was originally given to Ms. Knauer.[4]

The evidence does not establish, as a matter of law, that Mr. Knauer had the implied permission of his wife to use the station wagon in question on the occasion of the accident. Nor does the evidence demand a finding that Mr. Knauer, in using the station wagon to visit a restaurant and bar, was doing so for some purpose which was within the scope of the initial permission given to his wife—i. e., permission to use the station wagon for transportation to and from work. With respect to the implied permission of Ms. von Suttka, the mere absence of her testimony at trial does not demand a finding that Mr. Knauer had her implied permission to use the station wagon. Finally, with respect to the implied permission of Ms. Lundeen, the testimony of Ms. Lundeen demonstrates that Ms. Knauer did not have permission to use the station wagon for personal reasons and further, that Ms. Knauer was specifically told that no one else was to drive the station wagon.[5]

Appellants also contend that the district court committed reversible error by failing to charge the jury according to appellants' requested instructions that "permission to use a vehicle may be inferred from all the facts and circumstances attending its prior use . . . ," or to give a charge containing the rule stated in *Strickland v. Georgia Cas. & Sur. Co., supra*, 224 Ga. 487, 162 S.E.2d 421 (1968). The trial court specifically charged the jury that there was no issue concerning express permission in this case. In rejecting appellants' challenge to the court's refusal to charge the jury on implied permission, the court stated that implied permission is a term of "general terminology" and "has no particular legal significance."

Appellees cite several cases as support for their position that "implied permission" need not be further defined in jury instructions. *E. g., Maryland Cas. Co. v. Williams*, 184 F.2d 983, 986 (5th Cir. 1950); *Hodges v. Ocean Accident & Guar. Corp.*, 66 Ga.App. 431, 18 S.E.2d 28, 32 (1941), *cert. denied*, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763 (1942); *Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa*, 193 F.2d 255, 260 (8th Cir. 1952). However, in *Maryland Cas. Co. v. Williams, supra*, 184 F.2d at 986, this Court, in holding that the trial court's instructions on implied permission under Georgia law were not in error, noted that the trial court instructed the jury that in determining whether a driver of a vehicle had implied permission, it might consider all evidence as to former dealings between the parties and their relationship with reference to previous use of the vehicle. In *Stoll v. Hawkeye Cas. Co., supra*, 193 F.2d at 260, the court stated that implied permission is simply "actual permission circumstantially proved." *See Employers Mut. Cas. Co. of Des Moines v. Mosqueda*, 317 F.2d 609, 612 n.3 (5th Cir. 1963), in which the trial court instructed the jury that "permission can be implied from the course of conduct between [the parties]."

In reviewing challenged jury instructions, this Court considers "whether or not taking the charge as a whole and viewing it in the light of the allegations of the complaint and evidence, the Judge commu-

---

4. We note that the credibility of Mr. Knauer was challenged at trial and that the jurors were of course entitled to disregard the testimony of Mr. Knauer if they believed it was not credible. Much of the testimony relied upon by the Makovers was given by Mr. Knauer.

5. Ms. Knauer testified that on the only specific occasion that she could recall her husband using the station wagon he had express permission to run an errand for Arden Farms.

nicated the substance of the law correctly so that the jury was not misled in its understanding of the law or issues." *Kramer v. Keys*, 643 F.2d 382, 384 (5th Cir. 1981). Although we conclude that the district court did not commit reversible error in failing to define for the jury the phrase "implied permission," the better practice would have been for the district court to charge the jury that it might consider all facts and circumstances and evidence as to former dealings among the parties and their relationship with reference to previous use of the vehicles in question.

Appellants' contention that the district court also erred in failing to instruct on "scope of use" is essentially an assertion that the court failed to instruct the jury on a relevant and material issue presented by the evidence. However, appellants did not request such a charge, nor did they object to the court's omission of such an instruction. Under Fed.R.Civ.P. 51, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." *See, e. g., Bissett v. Ply-Gem Indus., Inc.*, 533 F.2d 142, 145 (5th Cir. 1976).

Finally, appellants contend that the district court erred by admitting certain evidence which they claim was irrelevant. Even assuming that the trial court erred in admitting the evidence, which related to certain payments to Mr. Knauer for repairs on the pickup truck, such error was harmless. Fed.R.Civ.P. 61.

AFFIRMED.

THOMAS A. CLARK, Circuit Judge, dissenting:

I respectfully dissent because we do not have jurisdiction under 28 U.S.C. § 1332(c) pursuant to our holding in *Campbell v. Insurance Co. of North America*, 552 F.2d 604 (5th Cir. 1977). The majority's reason for finding jurisdiction is that Dairyland Insur-

ance Company was the plaintiff. The majority puts excessive emphasis on the word "against" in the statute. If the Makovers had been plaintiffs in this declaratory judgment proceeding, I assume the majority would hold that we lack diversity jurisdiction.

I do not agree with the majority that this case is distinguishable from *Campbell, supra.*

The sole distinction between *Hernandez*[1] and this case is that here it is the insurer which wishes to appeal and has sought to invoke federal jurisdiction to do so. We hold it is without a difference. All the policy considerations arguing for the application of § 1332(c) made in *Hernandez*, and so well set out there, argue that it be applied here. Appellant asserts that this is not such a "direct action against the insurer" as § 1332(c) concerns. As for "directness," the case is as immediate between the injured claimant and the insurer as was *Hernandez*. That opinion disposes of all but the circumstance that here the shoe is on the other foot, *the insurer is bringing suit to appeal against the claimant. The distinction urged is valid, but too thin.* [Emphasis added.] As noted, all the same policy considerations for our earlier holding apply here. In addition, the actual nature of the claim to the board and appeal to the court, the overall proceeding seen as a whole, is that of a process initiated by the injured workman against the insurer; and even on the de novo appeal, the burden of proof remains with the plaintiff. Indeed, the district court formally realigned the parties below to reflect this fact. Finally, to accept appellant's contention would be [to] construe the statute so as to provide jurisdiction in federal court for a dissatisfied insurer—since the appeal action is not *against* [emphasis in original] it—but none for the unhappy claimant. Such a result argues eloquently against appellant's contention. *Id.* at 605.

Additionally, I disagree with the majority because this opinion adds uncertainty that

1. *Hernandez v. The Travelers Insurance Co.*, 489 F.2d 721 (5th Cir. 1974).

we do not need. Uncertainty in the law is always to be deplored. Especially is this true when jurisdiction is involved. Parties should know with all the certainty possible whether they can bring their lawsuit in a particular court. Here our court finds for the insurance company because it filed the initial suit. The state courts have more expertise in insurance coverage matters than we and set the policy judgments in this type of litigation. The case should be in the state court as intended by Congress when it amended Section 1332(c).

For the foregoing reasons, I dissent.